UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| WATTS CONSTRUCTORS, LLC, <br><br> Petitioner, <br><br> v. <br><br> BONESO BROTHERS CONSTRUCTION, INC., <br><br> Respondent. | Case No. 20-mc-00211-EFM |

### **ORDER**

This motion arises from petitioner Watts Constructors, LLC ("Watts"), the third-party in a related civil action pending in this court, 19-2269-EFM, *Airtex Manufacturing, LLC v. Boneso Brothers Construction, Inc*. On July 14, 2020, Boneso Brothers Construction, Inc. ("Boneso"), the defendant in the civil action and respondent here, served a subpoena duces tecum on Watts. Watts has filed a motion to quash the subpoena (ECF No. 1), which Boneso opposes. For the reasons discussed below, the court grants the motion to quash in part and denies it in part.

Background

Watts is a general contractor and construction manager for federal government construction projects.[1] Watts entered into a contract with the United States Army Corps of Engineers ("USACE") to provide general contracting and construction management

---

[1] ECF No. 1 at 2.

services for the Satellite Earth Terminal Station Facility project, located at Camp Roberts, California.[2] Watts subcontracted elements of the project, including mechanical and HVAC work, specifically Roof Top Units ("RTUs"), to Boneso.[3] Boneso contracted with Airtex Manufacturing, Inc. ("Airtex") to design, furnish, and install the RTUs.[4]

Airtex has filed an action against Boneso, alleging Boneso has failed to pay for certain elements of the project.[5] Watts is not a party to that action. Airtex alleges it hasn't been paid in full by Boneso for mechanical and plumbing construction services.[6] Boneso alleges one of the reasons Airtex hasn't been paid is because Watts has not paid Boneso in full for the HVAC units.[7] Boneso represents it is "not required to pay plaintiff until it has pursued to conclusion its legal remedies against Watts related to Watts's failure to pay."[8] Boneso alleges Watts has information related to communication with USACE, regarding the HVAC units,[9] that's relevant to the payment dispute. Boneso served a subpoena with 18 requests for production to Watts on July 15, 2020, requesting that Watts produce the documents by August 11, 2020.

---

[2] *Id.*

[3] *Id.*

[4] *Id.*

[5] Case No. 19-2269-EFM, No. 1.

[6] ECF No. 9 at 2.

[7] *Id.*

[8] *Id.*

[9] *Id.*

Watts objected to the requests. On August 11, 2020, subject to its objections, Watts made an initial document production to resolve the subpoena.[10] Watts asserted it would provide non-privileged, non-proprietary documents in response to some of the requests but would not produce e-mails, given the burden it would impose.[11] Watts maintained its objections to four requests that are now subject to the motion to quash.[12] Watts made supplemental productions on September 3, 2020 and September 11, 2020,[13] and Watts represents it has produced or will produce all non-privileged, non-proprietary documents in response to the subpoena, except for Request Nos. 3, 5, 6, and 13.[14] The parties have conferred multiple times by telephone and e-mail to resolve the subpoena.

On September 2, 2020, Boneso Brothers filed a motion to compel related to the subpoena in the underlying civil action.[15] The court granted that motion as unopposed on September 17, 2020.[16] Meanwhile, on September 15, 2020, Watts filed a motion to quash in the Eastern District of Virginia, Case No. 20-mc-00028.[17] The motion to quash was transferred to this court on October 2, 2020 by U.S. Magistrate Judge Ivan D. Davis who

---

[10] ECF No. 1 at 4.

[11] *Id.*

[12] *Id.*

[13] *Id.* at 5.

[14] *Id.*

[15] Case No. 19-2269-EFM, ECF No. 75.

[16] Case No. 19-2269-EFM, ECF No. 76.

[17] ECF No. 1.

found "exceptional circumstances dictate that the U.S. District Court for the District of Kansas is the proper court to handle the motion in order to avoid inconsistent rulings between the D. Kan. and the EDVA regarding the requested discovery."[18] To the extent Watts briefly raises the issue again in the instant motion, the court reiterates that it can properly adjudicate this issue because of the transfer from the Eastern District of Virginia.

On October 14, 2020, counsel for Boneso represented by e-mail to the court that he'd conferred with counsel for Watts and the discovery issues had been resolved, so the court did not revisit or vacate its prior order.[19] The parties expressed optimism the issues would be resolved, but the undersigned U.S. Magistrate Judge, James O'Hara, in an abundance of caution, told the parties he'd grant the motion to quash as unopposed unless there was further briefing or representation that the motion had been mooted.

As it happened, the parties did not, in fact, resolve their disputes, and Boneso filed its response on October 22, 2020.[20] Watts filed its reply on October 29, 2020.[21] The court joins the parties' frustration that their previous representations implied a resolution that did not actually occur. Nonetheless, the court, rather than accept Watts's suggestion to find the subpoena has been resolved,[22] turns to the parties' arguments.

---

[18] ECF No. 5.

[19] Case No. 19-2269-EFM, ECF No. 80.

[20] ECF No. 9.

[21] ECF No. 12.

[22] *Id.* at 2.

Analysis

Fed. R. Civ. P. 45 provides guidelines for the issuance of subpoenas to non-parties. Rule 45(d)(3)(A) requires the court to quash or modify a subpoena that requires compliance beyond the geographical limits of service; requires disclosure of privileged or protected information; or subjects a person to undue burden. The rule allows a court to quash a subpoena "on timely motion," although the court is not bound by a strict time period for determining timeliness.

One of Boneso's arguments is that the motion to quash was untimely because it was filed more than 30 days after the date of compliance and 60 days after service.[23] Fed. R. Civ. P. 45 does not define "timely," though Boneso cites case law from outside this district holding that "timely" means "at or around the time when a party files its objections or within the time set forth in the subpoena for compliance."[24] But this district gives courts discretion to consider motions to quash that were not "timely" filed within the meaning of Rule 45.[25] Boneso also argues Watts's objections to the subpoena, filed on August 6, 2020, were due by July 28, 2020 and are untimely.[26]

Although the court finds these arguments are made in good faith, it declines to deny the motion to quash on these bases. The record shows the parties have been trying, in good

---

[23] ECF No. 9 at 7.

[24] *Id.* (citing *Ward v. Liberty Insurance Corp.*, 2018 WL991546, at *2 (W.D. Oklahoma, February 20, 2018)).

[25] *Ward*, 2018 WL991546, at *2.

[26] ECF No. 9 at 8.

faith, to resolve the subpoena on their own and with the two courts involved. The court will not find Watts has waived its objections based on its ongoing cooperation and attempts to resolve the subpoena. Similarly, the court finds the motion was timely filed.

Watts maintains its objection that the court should quash the subpoena because of the geographical limits of Fed. R. Civ. P. 45(c)(1)A). Watts "does not maintain an office in Kansas, is not currently transacting business in Kansas, and does not regularly transact business in person in Kansas."[27] Watts maintains that the subpoena violates the geographical restrictions of Rule 45, although it concedes the majority of responsive documents can be produced electronically.[28]

As the court stated in its September 17, 2020 order, although Fed. R. Civ. P. 45(c)(1)(A) limits the mandatory appearance of witnesses beyond a 100-mile radius, courts in this district have repeatedly acknowledged that where a subpoena does not require attendance of any witnesses – only production of documents – there is no violation of the 100-mile limitation of Rule 45.[29] Production of the requested documents via e-mail, which Watts has already done over several rounds of production, is reasonable and does not

---

[27] ECF No. 1 at 7.

[28] *Id.*

[29] Case No. 19-2269-EFM, ECF No. 76. *Frick v. Henry Indus., Inc.*, No. 13-2490-JTM-GEB, 2016 WL 6966971, at *3 (D. Kan. Nov. 29, 2016); *Holick v. Burkhart*, No. 16-1188-JTM-KGG, 2017 WL 3723277, at *8 (D. Kan. Aug. 29, 2017).

impose a burden.[30]  Therefore, the court maintains this is not a reason to quash the subpoena.

Undue Burden

The court therefore moves to the substance of the subpoena.  The scope of discovery under a subpoena is the same as the scope of discovery under Rules 26(b) and 34 of the Federal Rules of Civil Procedure.[31]  Rule 26(b) allows discovery regarding "any nonprivileged matter that is relevant to any party's claims or defenses and proportional to the needs of the case."[32]  The proportionality standard moved to the forefront of Rule 26(b) when the rule was amended in 2015, which reinforced the need for parties to focus on the avoidance of undue expense to the parties.[33]  Although the court still considers relevance, the previous language defining relevance as "reasonably calculated to lead to the discovery of admissible evidence," was deleted in the 2015 amendment "because it was often misused

---

[30] *Holick*, 2017 WL 3723277, at *8 ("If the documents are being produced via e-mail, however, there is no additional burden on the witnesses to produce the documents.").

[31] *Butcher v. Teamsters Local 955*, No. 18-2424-JAR-KGG, 2019 WL 3453714, at *2 (D. Kan. July 31, 2019) (quoting *Parker v. Delmar Gardens of Lenexa, Inc.*, No. 16-2169-JWL-GEB, 2017 WL 1650757, at *3 (D. Kan. May 2, 2017)).

[32] Fed. R. Civ. P. 26(b)(1).  The proportionality standard takes into account "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  *Id.*

[33] *Frick*, 2016 WL 6966971, at *3.

to define the scope of discovery and had the potential to 'swallow any other limitation.'"[34] As such, the requested information must be nonprivileged, relevant, and proportional to the needs of the case to be discoverable.[35]

The court takes Watts's objections in turn. Watts objects to producing all e-mails and to producing privileged, confidential, and proprietary documents. For the four specific requests it objects to, Watts asserts they are overbroad and seek irrelevant information. Watts argues the underlying civil case "is a breach of contract and payment dispute between a subcontractor and its sub-subcontractor"[36] and Watts "should not be required to broadly produce all documents in response to these categories."[37] Watts proposes limited scopes of production accordingly.

E-Mail Production

Watts objects generally that it should not be required to produce all responsive e-mail correspondence related to a project that spanned nearly six years and included 25-30 personnel, in addition to subcontractors and suppliers.[38] Watts argues the search will be unduly expensive, costing between $10,000 and $20,000. Watts states its project team

---

[34] *Brown v. Panhandle E. Pipeline Co. L.P.*, No. 16-CV-2428-JAR-TJJ, 2018 WL 263238, at *2 (D. Kan. Jan. 2, 2018).

[35] *Funk v. Pinnacle Health Facilities XXXII, LP*, No. 17-1099-JTM-KGG, 2018 WL 6042762, at *1–2 (D. Kan. Nov. 19, 2018).

[36] ECF No. 1 at 9.

[37] *Id.* at 9-10.

[38] *Id.* at 8.

members each maintain their e-mails differently and producing each and every e-mail would require it to conduct "an extensive search of every custodian's account to find the information Boneso seeks."[39]

Watts proposed to Boneso that it should "limit its requests to specific date ranges, custodian accounts, and also provide a list of search terms for Watts to run over the accounts."[40] Boneso did not respond to this proposal.[41] Watts also argues Boneso should bear the cost.[42] Boneso argues the requests do not impose an undue burden and that it does not know who at Watts would have the relevant information or where these e-mails would be stored. Boneso is skeptical that 25-30 personnel would be involved in the relevant conversations; "it seems far more likely that 1 or 2 key individuals at Watts were participating in these communications."[43] Therefore, Boneso contends Watts should provide a list of e-mail custodians, including which of them likely had significant communications regarding the topics identified in the subpoena.[44]

The court is inclined to rule in favor of Watts on this issue. Boneso represented to the court on October 14, 2020, over a month after Watts's three productions, that its counsel

---

[39] ECF No. 12 at 7.

[40] ECF No. 1 at 8.

[41] ECF No. 12 at 7.

[42] ECF No. 1 at 8.

[43] ECF No. 9 at 11.

[44] *Id.*

"has not had the chance to review all of the documents received from Watts."[45]  Apparently, its client directed counsel not to review the documents "because it did not want to incur attorney's fees and costs for the review time."[46]  Based on this representation and Boneso's lack of supporting case law, the court is unpersuaded that Watts should be required to produce a nebulous and perhaps unwieldy number of e-mails.  The court declines the general request to compel all e-mails.  To the extent there are e-mails responsive to the specific requests that Watts has not produced but of which it is aware, Watts shall produce them in accordance with the rulings below.

Privileged, Confidential, and Proprietary Documents

Watts argues it shouldn't be required to produce documents it contends are privileged, confidential, or proprietary.  Specifically, Watts represents it cannot produce certain documents with proprietary information about pricing, staffing, and logistics of government construction projects.[47]  It proposes the court allow it to redact such confidential and proprietary information.  To that end, Watts produced a privilege log in response to the subpoena.[48]  Watts is essentially asking for a blanket protective order to protect against the disclosure of trade secret information.  As such, Watts must first establish that the information sought to be protected is indeed a trade secret, then must

---

[45] ECF No. 12-2 at 2.

[46] ECF No. 12 at 3.

[47] ECF No. 1 at 12.

[48] *Id.*

10

show that the disclosure of the trade secret information would result in a clearly defined and very serious injury.[49] To establish such an injury, Watts must "make a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."[50]

Boneso argues Watts has not met its burden to show that this information should be redacted, as Watts "does nothing more than make the conclusory statement that certain information is proprietary or confidential."[51] The court agrees. Beyond asserting that certain pricing and staff information, if released, "could cause harm to Watts's competitive edge,"[52] Watts hasn't cited any case law showing that this information is subject to redaction. In the underlying civil case, the court entered the parties' September 3, 2019 agreed protective order (ECF No. 21), whose provisions on confidential information are extended to third parties, if timely requested by the third party.[53] The protective order should adequately protect the parties' privacy and confidentiality rights.[54] The court denies Watts's request to redact information it contends is confidential or proprietary.

---

[49] *Rajala v. McGuire Woods, LLP*, No. CIV.A. 08-2638-CM-DJ, 2010 WL 4683979, at *11 (D. Kan. Nov. 12, 2010).

[50] *Id.*

[51] ECF No. 9 at 9.

[52] ECF No. 12 at 7.

[53] Case No. 19-2269-EFM, ECF No. 21, ¶ 16.

[54] *See Frick*, 2016 WL 6966971, at *3 (citing *Martin v. Grp. 1 Realty, Inc.*, No. 12-2214-EFM-DJW, 2013 WL 3322318, at *5 (D. Kan. July 1, 2013)).

Specific Requests

Boneso argues Watts has asserted general or conditional objections to the four requests at issue. Conditional objections occur "when a party asserts objections, but then provides a response 'subject to' or 'without waiving' the stated objections."[55] For example, "a general objection that objects to a discovery request 'to the extent' that it asks the responding party to provide documents or information protected by the attorney-client privilege or work product immunity is tantamount to asserting no objection at all."[56] To be clear, such objections "preserve nothing and serve only to waste the time and resources of both the parties and the court."[57] General objections are considered overly broad and worthless, unless the objections are substantiated with detailed explanations.[58]

After reviewing the relevant discovery requests and objections, the court agrees some of the objections, particularly those objecting on the basis of attorney-client privilege, are arguably general objections. Other objections in Watts's "general objections" are more specific, focusing on the particulars of the case with sufficient explanations. To the extent Watts has provided partial answers to these or other requests, the court strongly reminds

---

[55] *U, Inc. v. ShipMate, Inc.*, No. 2:14-CV-2287-JTM-TJJ, 2015 WL 3822731, at *3 (D. Kan. June 19, 2015).

[56] *Williams v. CoreCivic, Inc.*, No. 17-CV-2310-JAR-GLR, 2018 WL 3075867, at *3 (D. Kan. June 21, 2018).

[57] *Id.*

[58] *Id.*

Watts that conditional objections are not appropriate. On the whole, however, the court finds Watts's objections are specific enough so as not to be waived.

Request No. 3

Request No. 3 seeks "all documents evidencing payments Watts has received from USACE for work on the Project, including payment applications and corresponding payments from USACE."[59] Watts has produced documents showing payments received from USACE on account of Boneso's work on the project but objects to producing documents regarding other subcontractors' work or Watts's own work as irrelevant and overly broad.[60]

Boneso argues it is entitled to any payment applications and corresponding payments from the USACE. Boneso explains these payments are relevant to the underlying lawsuit, which involves failure to pay for work on this project. Airtex claims Boneso has failed to pay Airtex in full and that Watts *has* paid Boneso for Airtex's scope of work. Boneso argues Watts *hasn't* paid Boneso in full for Airtex's scope of work. The amount USACE has paid Watts, "in order to determine if Watts has properly flowed down payments from USACE to Boneso pursuant to their contract,"[61] is therefore relevant.

The court agrees with Boneso that the scope of the request is narrowly tailored, not unduly burdensome, and seeks information relevant to the underlying lawsuit. Watts shall

---

[59] ECF No. 1 at 10.

[60] *Id.*

[61] ECF No. 9 at 15.

produce any documents sent by Watts to the USACE requesting payments and any documents from the USACE acknowledging or disputing those payment requests.

Request No. 5

Request No. 5 seeks "all correspondence and other documents exchanged with USACE concerning payments owed or withheld related to the Project."[62] Watts has agreed to produce documents related to Boneso's work but objects to producing documents "concerning amounts withheld by USACE on account of other subcontractors' work or reasons unrelated to Boneso's work."[63]

Boneso again argues the documents related to payments are relevant to determining if Watts properly paid Boneso or retained some funds "to compensate Watts for the funds being withheld from the USACE related to Watts' (or its other subcontractors') deficiencies."[64] The court finds this request to be a closer call, given the broader language of the request. Ultimately, the court finds the language of "all correspondence and other documents" coupled with the vague language of "concerning payments" to be overly broad. The court sustains Watts's objection and requires it to produce only documents showing payments withheld for reasons related to Boneso's work.

---

[62] ECF No. 1 at 10.

[63] *Id.*

[64] ECF No. 9 at 17.

Request No. 6

Request No. 6 seeks "all documents and correspondence concerning any Miller Act claims related to the project."[65] Under 40 U.S.C. § 3131, a Miller Act claim is "a claim for non-payment against a general contractor's bond on a federal government construction project."[66] Watts argues any claims beyond Boneso's or Airtex's claims are irrelevant to the dispute at issue and that Boneso "is engaging in a fishing expedition."[67] Boneso argues this information is relevant "to determine if there are other subcontractors or suppliers from whom Watts is also withholding funds," which would show a "pattern of withholding funds from contractors on this project."[68]

Boneso does not proffer any evidence that Watts is withholding funds from other subcontractors or suppliers, nor does Boneso explain how this is relevant to its defense in the underlying action. The court sustains Watts's objection and requires it to produce only documents related to Boneso's and Airtex's Miller Act claims.

Request No. 13

Request No. 13 seeks "all documents and correspondence regarding liquidated damages for the project, including whether liquidated damages will be asserted related to

---

[65] ECF No. 1 at 11.

[66] *Id.*

[67] *Id.*

[68] ECF No. 9 at 18.

15

the project."[69]  Similarly to its other objections, Watts argues documents related to liquidated damages asserted or withheld on account of other subcontractors are irrelevant to the dispute here.[70]

Boneso argues this information is relevant to the claim in the underlying litigation that Watts is withholding money from Boneso because the USACE has threatened to impose liquidated damages.[71]  As Boneso cites, the record shows Watts references this threat as one of several reasons why it hasn't paid Boneso.[72]  Watts has produced a payment estimate showing "the amounts presently withheld from Watts for liquidated damages and the alleged reasons for the withholding (which Watts disputes)."[73]  Watts asks the court to find it has complied with the request by limiting its production to liquidated damages on account of Boneso's work.  Boneso argues that isn't sufficient because it doesn't know how Watts is going to make that determination.  Boneso argues other subcontractors' delays "that were potentially concurrent with alleged delays of Boneso/plaintiff" would be relevant to "determining what portion of liquidated damages could be assessed against Boneso and/or plaintiff."[74]

---

[69] ECF No. 1 at 11.

[70] *Id.*

[71] ECF No. 9 at 19.

[72] ECF No. 9-5 at 3.

[73] ECF No. 1 at 12.

[74] ECF No. 9 at 20.

Because the ultimate issue in the underlying claim involves Boneso's payment to Airtex – and Boneso claims it doesn't have to pay until it resolves its issues with Watts's payment – the court agrees the issue of liquidated damages is relevant here.  The court overrules Watts's objection as to Request No. 13 and directs Watts to produce the responsive information.

IT IS THEREFORE ORDERED that petitioner Watts's motion to quash (ECF No. 1) is granted in part and denied in part.  Watts's objections as to Request Nos. 5 and 6 are sustained.  Watts shall produce the documents sought by Request Nos. 3 and 13, without objection, by **November 20, 2020**.

Dated November 6, 2020, at Kansas City, Kansas.

s/ James P. O'Hara  
James P. O'Hara  
U.S. Magistrate Judge